## EDWARDS, FORMER COLLECTOR, *v.* CUBA RAILROAD COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 324. Argued April 15, 1925.—Decided June 8, 1925.

1. The meaning of "income," as used in § 38 of the Corporation Excise Tax Law of 1909, *held*, in its application to the case, not distinguishable from the meaning of the same word in the Income Tax Law of 1913 and the Revenue Act of 1916. P. 631.
2. The Sixteenth Amendment, like other laws authorizing or imposing taxes, is not to be extended beyond the meaning clearly indicated by its words. P. 631.
3. Money subsidies granted by the Cuban government to a railroad company of this country, to promote the construction of railroads in Cuba and in consideration also of reduced rates to the public as well as reduced rates and other privileges for the government, and which were fixed and paid proportionately to mileage actually constructed, and were used for capital expenditures by the company, though not entered on its books as in reduction of cost of construction,—*held* not income within the Sixteenth Amendment. P. 632.

Affirmed.

ERROR to a judgment for plaintiff railroad in the District Court in an action to recover money paid as income and corporation excise taxes.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom the *Solicitor General* and *Mr. Nelson T. Hartson* were on the brief, for plaintiff in error.

*Mr. Howard Mansfield,* with whom *Mr. Allen Evarts Foster* was on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiff, a New Jersey corporation, owns and operates a railroad in Cuba. In March, 1917, it made return of its income for 1916; and, in due time, paid the tax assessed

on the basis of its return. Plaintiff had received in 1911 to 1916, inclusive, subsidy payments from the Republic of Cuba, amounting in all to $1,696,216.20, but did not report any part of them as taxable income. January 1, 1918, the Commissioner of Internal Revenue assessed against plaintiff for 1916 an additional tax of $33,924.32, being two per cent.—the rate prescribed in the Revenue Act of 1916, (Act of September 8, 1916, c. 463, 39 Stat. 456)—on the total of such payments. Notwithstanding its objection that the assessment was without authority of law, plaintiff was required to pay the tax. It applied for refund. The commissioner adhered to the view that the amounts so received constituted income, but held that the payments were taxable in the years when received. Prior to the act of 1916, the tax rate was one per cent. There was repaid to plaintiff one per cent. on the payments made before that year, but its application was denied as to the balance, $20,239.18. This action was brought to recover that amount with interest. The complaint alleged that the subsidy payments were not income within the meaning of the Sixteenth Amendment. Defendant moved to dismiss the case on the ground that the complaint failed to state a cause of action. The court denied the motion and gave judgment for plaintiff. Defendant brought the case here on writ of error. § 238, Judicial Code.

An act of the Congress of the Republic of Cuba of July 5, 1906, authorized the President to contract with one or more companies for the construction and operation of certain lines of railroad on designated routes between places specified. The Republic granted a subsidy up to $6,000 per kilometer, payable in six annual instalments, to the companies constructing and maintaining in use the specified lines. Any company having such a contract was entitled to receive subsidies for that part of the railroad constructed after the passage of the act, as well as for the

part constructed after the making of the contract. March 25, 1909, the President of the Republic and the plaintiff made a contract, by which the latter agreed, in consideration of $6,000 per kilometer to be paid by the Republic as specified in the law of 1906, to construct and operate a railroad on the routes and between the places specified. And the plaintiff agreed to reduce by one-third the tariffs then in force for the transportation of permanent employees and troops of the government, and, in case of war or any disturbance of the public order, to transport troops in special trains at the rate of one cent per man per kilometer; and also agreed to reduce the fares for all first-class passengers. The entire line covered by this contract was completed in 1911. The subsidy payments amounted in all to $1,642,216.20, about one-third of the cost of the railroad.

An act of June 1, 1914, added to the law of 1906 an article which provided that the subsidy per kilometer for the construction of a railroad from Casilda to Placetas del Sur should be 6,000 pesos for a part and 12,000 pesos for the rest of the distance. June 30, 1915, in accordance with that act, the President of the Republic and plaintiff made a contract for the construction of the railroad. It bound the company to carry public correspondence free of charge on the lines of this railroad, to carry small produce for 50 per cent. of the tariff, and to allow telegraph and telephone stations to be established by the government alongside the railroad. And there was handed over to the plaintiff certain land, buildings, construction and equipment then in the possession of the State, which theretofore had been acquired and built in an earlier effort to complete that line. The subsidy payment in 1916 was $54,000.

All the subsidy payments under both contracts were credited to a suspense account and, June 30, 1916, were transferred to the surplus account, and were used for

capital expenditures. The cost of construction as carried on the books was not reduced by such payments.

The power given Congress by the Sixteenth Amendment is to "lay and collect taxes on incomes from whatever source derived." Defendant insists that the subsidy payment made in 1916 was taxable under the Revenue Act of 1916, which imposes an annual tax of two per centum "upon the total net income received . . . from all sources by every corporation" (c. 463, 39 Stat. 765); that the payments made in 1913, 1914 and 1915 were taxable under the Income Tax Law of October 3, 1913, c. 16, 38 Stat. 114, 172, which imposes an annual tax of one per centum "upon the entire net income arising or accruing from all sources . . . to every corporation", and that the payments made in 1911 and 1912 were taxable under the Corporation Excise Tax Law of August 5, 1909, § 38, c. 6, 36 Stat. 11, 112, which provides that "every corporation . . . shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation . . . equivalent to one per centum upon the entire net income . . . from all sources." Defendant insists that the subsidies were merely payments in advance on account of transportation service, later to be performed by the plaintiff for the government, and therefore are to be deemed income and taxable as such.

In respect of these subsidy payments, the meaning of "income" as used in the Corporation Excise Tax Law of 1909 is not to be distinguished from the meaning of the same word as used in the Income Tax Law of 1913 and the Revenue Act of 1916. *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, 518–519.

The Sixteenth Amendment, like other laws authorizing or imposing taxes, is to be taken as written and is not to be extended beyond the meaning clearly indicated by the language used. The Cuban laws and contracts are similar

to legislation and arrangements for the promotion of railroad construction which have been well known in the United States for more than half a century. Such aids, gifts and grants from the government, subordinate political subdivisions or private sources,—whether of land, other property, credit or money,—in order to induce construction and operation of railroads for the service of the public are not given as mere gratuities. *Burke* v. *Southern Pacific R. R. Co.,* 234 U. S. 669, 679; *Louisville & Nashville R. R.* v. *United States,* 267 U. S. 395. Usually they are given to promote settlement and to provide for the development of the resources in the territory to be served. The things so sought to be attained in the public interest are numerous and varied. There is no support for the view that the Cuban Government gave the subsidy payments, lands, buildings, railroad construction and equipment merely to obtain the specified concessions in respect of rates for government transportation. Other rates were considered. By the first contract, plaintiff agreed to reduce fares for first class passengers and by the second, it agreed to reduce the rates on small produce. Clearly, the value of the lands and other physical property handed over to aid plaintiff in the completion of the railroad from Casilda to Placetas del Sur was not taxable income. These were to be used directly to complete the undertaking. The Commissioner of Internal Revenue in levying the tax did not include their value as income, and defendant does not claim that it was income. Relying on the contract for partial reimbursement, plaintiff found the money necessary to construct the railroad. The subsidy payments were proportionate to mileage completed; and this indicates a purpose to reimburse plaintiff for capital expenditures. All—the physical properties and the money subsidies—were given for the same purposes. It cannot reasonably be held that one was contribution to capital assets, and that the other was profit, gain or

income.   Neither the laws nor the contracts indicate that the money subsidies were to be used for the payment of dividends, interest or anything else properly chargeable to or payable out of earnings or income.   The subsidy payments taxed were not made for services rendered or to be rendered.   They were not profits or gains from the use or operation of the railroad, and do not constitute income within the meaning of the Sixteenth Amendment.   See *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 415; *Eisner* v. *Macomber*, 252 U. S. 189, 207; *Merchants' Loan & Trust Co.* v. *Smietanka, supra.*

*Judgment affirmed.*