FRANK HOLTON & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10261. Promulgated March 12, 1928.

*H. A. Mihills, C. P. A.,* for the petitioner.
*D. D. Shephard, Esq.,* for the respondent.

OPINION.

Arundell: Among the claims advanced in this case are claims for additional depreciation for 1918 and for inclusion in invested capital for that year of the cost of the Elkhorn land and building. Inasmuch as no deficiency has been determined for 1918, we can consider the facts for that year only in so far as they may affect taxes for subsequent years and not for the purpose of determining that year's tax. Section 274(g) of the Revenue Act of 1926.

The several issues presented all arise out of the item of $45,475.82, representing the cost to the Elkhorn Factory Co. of property deeded to the petitioner in 1920. The petitioner says that that amount was not income in any year, or, in the alternative, that if it was income at all it was income in 1918 when it obtained " equitable title by possession." The petitioner must be sustained on its first contention, namely, that no income was realized in any year by the receipt of the property from the Elkhorn Factory Co. *Edwards* v. *Cuba R. R. Co.*, 268 U. S. 628; *Liberty Light & Power Co.*, 4 B. T. A. 155; *Aransas Compress Co.* v. *Commissioner*, 8 B. T. A. 155; *Texas & Pac. Ry. Co.* v. *Commissioner*, 9 B. T. A. 365; *S. E. Overton Co.* v. *Holden, Collector*, decided by the District Court of the United States for the Western District of Michigan, Southern Division, September 19, 1927.

Petitioner claims that the cost of the property to the donor should be included in invested capital of petitioner from the time petitioner took possession in 1918. We had a similar situation in *A. C. F. Gasoline Co.* v. *Commissioner*, 6 B. T. A. 1337, where a contract was acquired by the taxpayer from nonstockholders. We there held:

It seems clear that the petitioner secured a very favorable contract from the three organizations owning the lease, none of which were stockholders in the petitioner corporation. Such a transaction does not give rise to paid-in surplus. The contract was not paid in by the stockholders; it was not a gift from the stockholders. It was acquired from nonstockholders, and the petitioner is no more entitled to have its value included in invested capital than the value of any other advantageous contract.

That decision is in accord with the principle underlying the computation of invested capital, that is, that the amount shall be restricted to sums risked in the business with the hope of realizing a gain from the investment. It is said in *La Belle Iron Works* v. *United States*, 256 U. S. 377, that:

When speaking of the capital of a business corporation or partnership, such as the act deals with, "to invest" imports a laying out of money, or money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business.

In the present case, while undoubtedly the contributors to the fund raised for purchasing the donated property hoped to benefit therefrom through the stimulation of business in the community, such hope is far removed from an expectation of gain through an investment in the business enterprise. As far as the record shows neither the contributors nor the donor of the property were stockholders in the petitioner; they acquired no interest of any kind in it. In these circumstances, the cost of the property to the donor does not constitute paid-in surplus and no part of it can properly go into invested capital.

The next assignment of error is the failure of respondent to allow a deduction for depreciation upon the depreciable portion of the property here involved for the full years 1918, 1919, and the first half of the year 1920. The respondent denies that he so erred. On this state of the pleadings we assume that the respondent allowed depreciation on the building for the latter half of the year 1920, and, as no issue is raised as to that allowance, except as to the amount, we do not pass on it. The evidence is that some time during 1920 the petitioner completed performance of the obligations placed upon it by the contract of March, 1917, as conditions precedent to the right to acquire title to the property. Under the contract petitioner's relation to the property was nothing more than that of a lessee with an option to eventually acquire title by fulfilling the terms laid down. It did not have title to the property, nor did it have a capital investment therein, in 1918, 1919, or the first half of 1920, and it is not entitled to deductions for depreciation for that period. *Military Equipment Co.*, 2 B. T. A. 36.

On the question as to the depreciation rate, the petitioner has established that the useful life of the building acquired was not in excess of 33⅓ years, and it is accordingly entitled to deductions of 3 per cent per year for the latter half of 1920 and for the subsequent years involved. Petitioner asks that this rate be applied to the cost of the building to the donor, in the amount of $40,475.82. We are satisfied from the evidence that the building had a value of at least that amount when acquired by the petitioner in 1920, and the 3 per cent rate should be applied to that figure.

Special assessment is asked by the petitioner, as an alternative in the event we find that the cost of the property involved was in-

come to it. Having found for the petitioner on that question, we do not pass on the alternative issue.

*Judgment will be entered on 15 days' notice, under Rule 50.*